# EXHIBIT 1

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| TERRENCE CARTER <br> c/o Kisner Law, LLC <br> 8401 Corporate Drive, Suite 650 <br> Hyattsville, MD 20785 <br><br> Plaintiff <br><br> v. <br><br> BALTIMORE CITY <br> POLICE DEPARTMENT <br> Justin Conroy, Esq. <br> Chief of the Office of Legal Affairs <br> 100 N. Holliday St., Suite 101 <br> Baltimore, MD 21202 <br><br> MICHAEL S. HARRISON <br> 8 Murifield Place <br> New Orleans, LA 70131 <br><br> OFFICE OF THE <br> STATE'S ATTORNEY FOR <br> BALTIMORE CITY <br> Ivan J. Bates, Esq. <br> 120 East Baltimore Street <br> Baltimore, MD 21202 <br><br> MARILYN MOSBY <br> 915 S. Wolfe Street #122 <br> Baltimore MD 21231 <br><br> Defendants | * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> Case No.: _____ <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**NOW COMES** the Plaintiff, **TERRENCE CARTER**, (hereinafter "Carter" or "Plaintiff") by and through his attorney, Jason Kisner, and files this complaint against Defendants, Baltimore City Police Department and Office of the State's Attorney for Baltimore City, and in support thereof states as follows:

## PARTIES

1. This is a civil action for damages arising from Defendant's negligence and violation of Plaintiff's constitutional rights pursuant to the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983, and the Maryland Local Government Tort Claims Act (LGTCA), Md. Code Ann., Cts. & Jud. Proc. §5-301 et seq.

2. Plaintiff, Terrence Carter, is a resident of Cambridge, Maryland. Defendant, Baltimore Police Department, is a local government agency located in Baltimore, Maryland. Defendant, Office of the State's Attorney for Baltimore City, is a local government entity located in Baltimore, Maryland.

3. This Court has jurisdiction over this matter pursuant to the Maryland Local Government Tort Claims Act (LGTCA) Md. Code Ann., Cts. & Jud. Proc. § 5-301 et. seq., and 42 U.S.C. § 1983. Venue is proper in this court because the acts and omissions complained of occurred in Baltimore City, Maryland.

## FACTS COMMON TO ALL COUNTS

4. On or about July 9, 2020, Plaintiff was arrested by the Defendants, who alleged Terrence Carter had murdered Steven Lamont Clark, Sr. According to reports prepared by Defendants, the murder of Clark occurred at approximately 10:30 am on May 22, 2020, in front of Clark's home in the Forest Park neighborhood of West Baltimore. The Defendants' report indicated that the suspect shooter entered a blue pick-up style truck after Clark's murder.

5. Defendants utilized a plethora of methods at their disposal to ascertain information pertaining to the suspect vehicle. One such method Defendants utilized was aerial surveillance conducted by a "spy plane," a single engine Cessna operated by Persistent Surveillance Systems, a private company attempting to do business with Defendants by implementing what was to be

known as the "Community Support Program" whose inception began in 2016. Using the aerial surveillance obtained from the spy plane, Defendants discovered that the owner of the target vehicle was Enterprise Rent-A-Car. The evidence obtained from the spy plane indicated that the vehicle had stopped at a location associated with a person of interest in regard to Clark's murder, three blocks away from where the incident took place.

6. Upon Carter's arrest, Defendants did not provide a sufficient basis for their allegations that Plaintiff had murdered Clark but based their allegations on unspecified information ascertained from aerial surveillance conducted by the spy plane.

7. Defendants did not disclose in charging documents against Carter the basis for their allegations. The use of the surveillance plane was not mentioned, only that Defendants stated they had obtained unspecified information from an anonymous source which led Defendants to believe Carter had committed the murder of Clark.

8. The request to utilize the aerial footage obtained from the spy plane was initiated by Baltimore City Police Detective Tavon McCoy. The planes were not flying on the morning the murder occurred as the planes cannot function in inclement weather and it was raining that morning. As the result of a BOLO issued by Defendants, a Baltimore City Police detective also working supplemental security at Mondawmin Mall on May 19, informed Defendants he had interacted with two men in a blue pick-up truck. Defendants obtained security footage from Mondawmin Mall and in addition, issued a "supplemental request" -- a workaround included in the Memorandum of Understanding (MOU) which was approved by Defendant and former Commissioner Michael Harrison. Using the spy plane's surveillance footage violated the MOU, which stated that a supplemental request should only be utilized under extraordinary or exigent

circumstances. In this instance, the footage from the spy plane was utilized to surveil the blue truck days before the crime occurred and miles away from where it took place.

9. Defendants' charging documents against Plaintiff alleging murder referenced a vague description of "video evidence." The documents further indicated that witnesses identified Terrence Carter. However, this fact remains unsubstantiated as no witnesses had identified Mr. Carter on the day of Clark's murder. Furthermore, there was no video from the spy plane or on the ground footage showing a blue truck leaving the crime scene where Clark was killed.

10. Carter was charged with first-degree murder, use of a firearm in a violent crime, and possession of a firearm with a felony conviction. Carter was also held without bond.

11. In May of 2021, Carter was offered a plea deal of 60 years with 5 years' probation which he rejected. Plaintiff chose to go to trial

12. Carter's trial was scheduled for October 24, 2022. On that day, the State's Attorney's Office suddenly dropped the case.

13. During Carter's incarceration and time during preparation for trial, the use of the spy plane's surveillance had not been disclosed to Carter or his defense counsel, Bradley L. MacFee, Sr. prior to trial.

14. Defendants stated their reason for the dismissal was a missing key witness. Following this, Defendants opined that more time would be needed to locate and find additional witnesses.

15. As a consequence of the dismissal, Plaintiff was released from incarceration, however Defendants re-indicted Carter on November 16, 2022, and he was committed to fully restricted house arrest until his trial in 2023.

16. At the close of the trial on August 23, 2023, Judge John a Howard ruled in favor of a motion for judgment of acquittal and concluded that there had been no sufficient evidence presented by Defendants to identify Plaintiff as the person who killed Steven Clark on May 22, 2020. Judge Howard acquitted Mr. Carter on the grounds of insufficient evidence.

17. Bradley L. MacFee, Sr. has signed an affidavit that he was unaware of the aerial evidence Defendants ascertained through the spy plane until he was contacted by Baltimore Magazine and The Garrison Project for a story the periodical was writing. Defendants did not inform Mr. MacFee of the aerial surveillance footage used by the spy plane despite now overwhelming evidence to the contrary.

18. As a result of Defendants' actions, Carter spent two years incarcerated in the Baltimore City Detention Center and another on home detention while waiting for Defendants to prepare for trial. Without any regard for Carter's constitutional rights, during this time he lost his job, became estranged from his young daughter during her most formative years, caught COVID-19 three times, remained estranged from his family, and suffered serious mental health deterioration. As a result of Defendants' conduct, Plaintiff suffered irreparable and egregious hardships that cannot be quantified.

## COUNT I - VIOLATION OF MD LOCAL GOVERNMENT TORT CLAIMS ACT

19. Plaintiff incorporates by reference all preceding paragraphs as fully set forth herein.

20. Defendants are liable under the LGTCA for the tortious acts committed by their employees within the scope of their employment. Plaintiff has complied with all notice requirements under the LGTCA. Plaintiff provided notice to Defendants in Plaintiff's Notice of Claim letter dated May 3, 2024, to the Acting City Solicitor. A copy of the letter is attached as Exhibit "A". In accordance with Maryland law, the LGTCA includes the Baltimore City Police

Department. *Dehn Motor Sales, LLC v. Schultz*, 96 A.3d 221, 439 Md. 460 (Md. 2014). The LGTCA applies to tortious conduct allegedly committed by Baltimore City police officers. *Smith v. Danielczyk*, 400 Md. 98, 110-113, 928 A.2d 795, 802-03 (Md. 2007). Under the LGTCA, Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ" §§5-301-5-304, generally, "a local government [is] liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by employee within the scope of employment with the local government. CJ &5-303(b)(1). *Balt. City Police Dep't v. Potts*, 468 Md. 265, 227 A.3d 186 (Md. 2020).

## COUNT II - NEGLIGENCE

21. Plaintiff incorporates by reference all preceding paragraphs as fully set forth herein.

22. Pursuant to Maryland law, police officers are generally entitled to immunity for tort liability in regard to conduct deemed negligent. However, prior to a governmental representative being relieved of liability, it must be established whether the following independent factors exist simultaneously: 1) the individual actor, whose alleged negligent conduct is at issue, is a *public official* rather than a mere *government employee or agent*; and 2) the tortious conduct occurred while the person was performing *discretionary* as opposed to *ministerial*, acts in furtherance of his official duties. *Clea v. Mayor of Baltimore*, 312 Md. 662, 672 (Md. 1988). Once it is established that the individual is a public official and the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability. *Id*. Furthermore, a police officer does *not* enjoy this immunity if he commits an intentional tort or acts with malice. *Id*. (*citing Cox v. Prince George's County, supra*, 296 Md. at 169, 460 A.2d 1038.

23. In the case *sub judice*, Defendants failed to disclose relevant and material evidence about which the Plaintiff only learned from a media source. The Defendants had the aerial surveillance footage conducted by the spy plane in their possession, ascertained from a program Defendants initiated and utilized which further put Defendants under an obligation to disclose to Plaintiff and his attorney. Moreover, Defendants violated the Memorandum of Understanding (MOU) between the City of Baltimore and Persistent Surveillance Systems which ensured the spy plane's flights would be disclosed to residents, the data properly stored, and that the spy plane would only be used to investigate murders, shootings, armed robberies, and carjackings. The supplemental request as approved by then Commissioner Harrison violated the MOU as such requests should only be utilized under exigent circumstances, as addressed and stated in the MOU. It was further noted that Defendants' supplemental requests and use of the spy planes provided Defendants unlimited ability to surveil its citizens. These acts in the aggregate constitute deliberate and intentional performance of an illegal act which indubitably demonstrates 'malice' under Maryland law.

24. Defendants owed a duty to Plaintiff to act with reasonable care in the execution of their duties and to ensure Plaintiff's constitutional rights were protected including Plaintiff's reasonable expectation of privacy in accordance with the Fourth Amendment and the right to a speedy trial pursuant to Plaintiff's Sixth Amendment rights. Defendants breached this duty while in the scope of their employment by failing to properly disclose critical evidence. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered significant damages, including but not limited to loss of job, income, mental and physical anguish, and loss of companionship and relationships.

## COUNT III - VIOLATION OF FOURTH AMENDMENT RIGHTS (42 U.S.C. 1983)

25. Plaintiff incorporates by reference the preceding paragraphs as fully set forth herein.

26. Defendants' actions constituted an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution. In regard to the aerial surveillance program initiated and utilized by Defendants; the aforementioned program was deemed unconstitutional on the grounds the surveillance ascertained by the spy planes violated a person's reasonable expectation of privacy. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 342 (4th Cir. 2021). Defendants acted under the color of state law in conducting unlawful surveillance and detaining Plaintiff without disclosure of critical evidence. Moreover, as this court is aware, the perpetual purpose of the Fourth Amendment is to serve as the silent guardian of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," providing that "no warrants shall issue, but upon probable cause." U.S. Const. amend. IV.

The United States Supreme Court, in their jurisprudence, has declared that "the basic purpose of this Amendment... 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials'". *Carpenter v. United States*, 138 S. Ct. 2206, 201 L. Ed.2d 507 (2018) (*quoting Camara v. Mun. Ct. of City & Cnty. Of S.F.*, 387 U.S. 523, 528, 87 S.Ct.1727, 18 L. Ed. 2d 930 (1967). With regards to the spectre of surveillance programs which gather their data from devices like the spy planes, Maryland law has concluded that the utilization of these programs which monitor a person's physical location and movements violates a person's reasonable expectation of privacy pursuant to Fourth Amendment principles when the devices utilized cross the precipitous of the permissible to downright egregiously intrusive. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F. 4th, 330, 341 (4th Cir. 2021). Accordingly, the air

surveillance footage and data of Plaintiff, as ascertained and accessed by Defendants, was considered a "search" pursuant to Fourth Amendment principles, without a warrant, through the use of the spy plane, and constituted an invasion of Plaintiff's expectation of privacy. *Id.* at 344. On the grounds that the aforementioned conduct was barred by the Fourth Amendment, Defendants' actions were indubitably illegal. As a direct and proximate result of Defendants' actions, Plaintiff has suffered significant damages, including but not limited to loss of job, income, mental and physical anguish, and loss of companionship and relationships. It should be further noted that under Maryland common law, civil damages can be awarded against a police officer for violating Plaintiff's constitutional rights by conducting a constitutionally impermissible search, arrest, or detention without regard to whether the individual acted with malice. *Lee v. Cline*, 149 Md. App. 38 (Md. Ct. Spec. App. 2002) (citing *Clea v. City of Baltimore*, 312 Md. 662, 541 A 2d. 1303 (1988). Pursuant to this principle, State officers have no government immunity against constitutional torts.

## COUNT IV - VIOLATION OF RIGHT TO SPEEDY TRIAL (SIXTH AMENDMENT AND ARTICLE 21 OF THE MD DECLARATION OF RIGHTS)

27. Plaintiff incorporates by reference all preceding paragraphs as set forth herein.

28. Plaintiff's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. In Maryland, a Defendant is guaranteed the right to a speedy trial pursuant to Article 21 of the Maryland Declaration of Rights as well as the Sixth Amendment of the Constitution of the United States. *Duvall v. State*, No. 568-2020 (Md. Ct. Spec. App. Sep. 14, 2021). In the case at bar, the Defendants, acting under color of state law, violated Plaintiff's right to a speedy trial by causing unreasonable delays in the commencement of Plaintiff's trial. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered irreparable and significant harm,

including but not limited to prolonged pretrial detention, loss of employment, financial hardship, emotional distress, and adverse effects on personal relationships. As previously addressed above, State officers have no government immunity against constitutional torts. *Lee v. Cline*, 149 Md. App. 38 (Md. Ct. Spec. App. 2002) (citing *Clea v. City of Baltimore*, 312 Md. 662, 541 A 2d. 1303 (1988).

## DAMAGES

Plaintiff seeks compensatory damages in the amount of Twenty-Five Million Dollars ($25,000,000.00) for the losses suffered because of Defendant's actions.

WHEREFORE, Plaintiff, Terrence Carter respectfully requests this Honorable Court:

1. Enter judgment in favor of Plaintiff and against Defendants on all counts.

2. Award Plaintiff compensatory damages in the amount of Twenty-Five Million Dollars ($25,000,000.00).

4. Award Plaintiff attorney's fees and costs.

5. Grant such other and further relief as this Court seems just and proper.

Respectfully submitted this 19th day of August 2024

Jason D. Kisner, Esquire
CPF #1402060005
Kisner Law LLC
8401 Corporate Dr Suite #650,
Hyattsville, MD 20785
(o) (240) 459-0097
(f) (240) 667-7845
jason@jasonkisnerlaw.com

EXHIBIT A



KISNER LAW

May 3, 2024

City of Baltimore
Attn: Ms. Ebony Thompson
Acting City Solicitor
City Hall – Room 250
100 N. Holliday Street
Baltimore, Maryland 21202
**SENT VIA CERTIFIED MAIL**

## NOTICE OF CLAIM

Dear Solicitor Thompson:

      I represent Mr. Terrence Carter who spent three years in jail and on house arrest in a case where police and prosecutors relied on evidence obtained using Baltimore Police Department's unconstitutional aerial surveillance program. The Baltimore City States's Attorney's Office may have known that surveillance evidence was used in the investigation of the case but failed to disclose it. While the case(s) against my client were ultimately dismissed, he suffered devastating consequences as a result of oppressive pre-trial detention.

      On July 9, 2020, my client was arrested and charged with committing a homicide that occurred on May 22, 2020, but could never be proven. Mr. Carter was held without bond for 26 months while awaiting trial. During this time, he endured a judicial rollercoaster that was entirely preventable, and he lost three precious years of his life that are forever gone.

      In June 2021, while my client was incarcerated, the Fourth Circuit Court of Appeals, sitting *en banc*, ruled that the spy plane program that had been tested in Baltimore was unconstitutional under the Fourth Amendment to the United States Constitution. <u>At no time did the States's Attorney disclose to my client that the State used spy plane information to establish its case</u>. Alternately, if the State claims to be unaware of the use of this illegal tactic, it is because the police failed to disclose that element of their investigation to them. In fact, on October 24, 2022—the day of my client's trial—the State's Attorney's Office dropped the case. The following month, Mr. Carter was re-indicted and remained under house arrest for one year. Ultimately, Mr. Carter's case went to trial and was dismissed via judgment of acquittal by Circuit Court Judge John A. Howard on August 23, 2023, due to insufficient evidence.

      Throughout this time, my client did not know the surveillance plane was used in his case until his defense attorney, Brad MacFee, was contacted for an interview by *Baltimore* magazine

8401 Corporate Drive, Suite 650 | Hyattsville, MD 20785

Phone: 240-459-0007 | Fax: 240-667-7845 | www.jasonkisnerlaw.com

and The Garrison Project, which published a detailed article on its findings dated March 19, 2024.

As a result of the unconstitutional efforts of the Baltimore Police Department and the Baltimore City State's Attorney's Office, my client has endured insurmountable losses, both economic and non-economic, including loss of a job and income, mental and physical anguish, loss of companionship, contracting COVID on three occasions, loss of his relationship with others, including loss of a fatherly relationship with his only child, a daughter, humiliation, pain, anxiety, depression and other losses that will continue into perpetuity.

Upon information and belief, many Baltimore City employees are aware of this unlawful conduct. The following individuals are on notice:

1. Former Baltimore Police Commissioner Michael S. Harrison
2. Former State's Attorney Marilyn Mosby
3. State's Attorney Ivan J. Bates
4. Detective Tavon McCoy
5. Detective Marcus Sanders
6. Detective Evan Zimrin
7. Assistant State's Attorney Amy Brown
8. James E. Bentley II, State's Attorney's Office
9. Assistant State's Attorney Cynthia Banks

The City of Baltimore is liable for my client's injuries pursuant to the Local Government Tort Claims Act for violation of my client's Constitutional rights through the Fourth Amendment and other civil rights violations. The Baltimore Police Department and the State's Attorney's Office had a duty to comply with the law and it breached those duties. As a result, my client lost three years of his life while wrongfully detained. No amount of money can make Mr. Carter whole but a settlement figure that captures the magnitude of this wrong is necessary. Therefore, I hereby demand the City of Baltimore pay Mr. Carter Twenty-Five Million Dollars ($25,000,000.00) to resolve this claim.

Please let this serve as formal notice of this claim and direct all further correspondence to my office. My client intends to seek all remedies, including litigation, if we cannot amicably resolve this matter.

Very respectfully,

Jason Kisner

E-SERVED Baltimore City Circuit Court 8/27/2024 8:21 AM System Envelope: 17776689
E-FILED; Baltimore City Circuit Court
Docket: 8/27/2024 8:27 AM; Submission: 8/27/2024 8:27 AM
Envelope: 17776689

**CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202

Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

To: OFFICE OF THE STATE'S ATTORNEY FOR BALTIMORE CITY
C/O IVAN J. BATES, ESQUIRE
120 EAST BALTIMORE STREET
BALTIMORE, MD 21202

Case Number: C-24-CV-24-002246
Other Reference Number(s):
Child Support Enforcement Number:

**TERRENCE CARTER VS. BALTIMORE CITY POLICE DEPARTMENT, ET AL.**

Issue Date: 8/27/2024

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

TERRENCE CARTER
c/o Kisner Law, LLC
8401 Corporate Drive, Suite 650
Hyattsville, MD 20785

This summons is effective for service only if served within 60 days after the date it is issued.

*Xavier A. Conaway*
Xavier A. Conaway
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:
1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

CC-CV-032 (Rev. 03/2024)   Page 1 of 3   08/27/2024 8:21 AM