## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**TERRENCE CARTER,**

     *Plaintiff,*

     **v.**

**BALTIMORE CITY POLICE
DEPARTMENT,** *et al.*,

     *Defendants.*

**Civil No.: 1:24-cv-03057-JRR**

## <u>MEMORANDUM OPINION</u>

Pending now before the court is Baltimore City Police Department ("BPD") and former Police Commissioner Michael Harrison's (collectively, "BPD Defendants") Motion to Dismiss Plaintiff's Complaint.[1] (ECF No. 11; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I.    <u>BACKGROUND</u>[2]

Plaintiff Terrence Carter brings this action alleging negligence and violation of his Fourth Amendment rights by BPD Defendants. (ECF No. 4 ¶ 1.)

### A.  The Aerial Investigation Research Program

The Aerial Investigation Research ("AIR") program is "a first-of-its-kind aerial surveillance program operated by the Defendants—[BPD] and Commissioner Michael Harrison."

---

[1] At the initiation of this action, Plaintiff named BPD, Harrison, the Office of the State's Attorney for Baltimore City, and Marilyn Mosby as Defendants. (ECF No. 4.) The State's Attorney for Baltimore City was subsequently dismissed from this action pursuant to a stipulation of dismissal. (ECF Nos. 19, 20.) To the extent this action is brought against Mosby in her individual capacity, there is no record before this court that she has been served or that Plaintiff has made any efforts to prosecute this action against her.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 4.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 333 (4th Cir. 2021)

("*Leaders of a Beautiful Struggle III*").  More specifically:

> The AIR program uses aerial photography to track movements related to serious crimes. Multiple planes fly distinct orbits above Baltimore, equipped with [Persistent Surveillance Systems' ("PSS")] camera technology known as the "Hawkeye Wide Area Imaging System." The cameras capture roughly 32 square miles per image per second. The planes fly at least 40 hours a week, obtaining an estimated twelve hours of coverage of around 90% of the city each day, weather permitting. The [Professional Services Agreement ("PSA")] limits collection to daylight hours and limits the photographic resolution to one pixel per person or vehicle, though neither restriction is required by the technology. In other words, any single AIR image—captured once per second—includes around 32 square miles of Baltimore and can be magnified to a point where people and cars are individually visible, but only as blurred dots or blobs.
>
> The planes transmit their photographs to PSS "ground stations" where contractors use the data to "track individuals and vehicles from a crime scene and extract information to assist BPD in the investigation of Target Crimes." "Target Crimes" are homicides and attempted murder; shootings with injury; armed robbery; and carjacking. Between 15 and 25 PSS contractors analyze the data, working in two shifts per day, seven days per week. The AIR program is not designed to provide real-time analysis when a crime takes place, though.

*Id.* at 334 (record citations omitted).  The AIR program was the product of a partnership between

BPD and private contractor PSS.  *Id.* at 333.  (ECF No. 4 ¶ 5.)

On April 9, 2020, a group of grassroots community advocates in Baltimore filed a lawsuit

challenging the constitutionality of the AIR program under the Fourth Amendment.  *Leaders of a*

*Beautiful Struggle III*, 2 F.4th at 335.  The plaintiffs sought a temporary restraining order and

preliminary injunction to enjoin operation of the AIR program.  *Id.*  On April 24, 2020, the

Honorable Judge Richard D. Bennett of this court denied the motion, concluding, *inter alia*, that

the plaintiffs had not established that they were likely to succeed in showing that the imagery data

captured by the AIR program violates the Fourth Amendment. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 456 F. Supp. 3d 699, 717 (D. Md.), *aff'd,* 979 F.3d 219 (4th Cir. 2020), *on reh'g en banc,* 2 F.4th 330 (4th Cir. 2021), and *rev'd and remanded,* 2 F.4th 330 (4th Cir. 2021) ("*Leaders of a Beautiful Struggle I*"). The plaintiffs appealed and, on November 5, 2020, the Fourth Circuit affirmed the district court's order, concluding that the AIR program did not invade a reasonable expectation of privacy under the Fourth Amendment. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 979 F.3d 219, 229 (4th Cir. 2020), *on reh'g en banc,* 2 F.4th 330 (4th Cir. 2021) ("*Leaders of a Beautiful Struggle II*"). In December of 2020, the Fourth Circuit granted the petition for rehearing en banc. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 831 F. App'x 662 (4th Cir. 2020). Then, finally, on June 24, 2021, the Fourth Circuit issued its decision on rehearing, holding that "because the AIR program enables police to deduce from the whole of individuals' movements," "accessing its data is a search, and its warrantless operation violates the Fourth Amendment." *Leaders of a Beautiful Struggle III*, 2 F.4th at 333.

### B. The Investigation and Prosecution of Plaintiff

On May 22, 2020, Steven Lamont Clark, Sr., was murdered in front of his home in the Forest Park neighborhood of West Baltimore. (ECF No. 4 ¶ 4.) The suspect shooter left the scene in a "blue pick-up style truck." *Id.* In the course of investigating the suspect vehicle, BPD Defendants used aerial surveillance by way of the AIR program to discover the suspect vehicle was owned by Enterprise Rent-A-Car. *Id.* ¶ 5. In particular, BPD Detective Tavon McCoy submitted a "supplemental request" to utilize the aerial surveillance footage, which Commissioner Harrison approved, despite the fact that use of the footage violated a Memorandum of Understanding ("MOU") between Defendants and PSS, as a supplemental request was only to be "utilized under extraordinary or exigent circumstances." *Id.* ¶ 8. Importantly, "the footage from

the spy plane was utilized to surveil the blue truck days before the crime occurred and miles away from where it took place."  *Id.*  Ultimately, "[t]he evidence obtained from the spy plane indicated that the vehicle had stopped at a location associated with a person of interest in regard to Clark's murder, three blocks away from where the incident took place."  (ECF No. 4 ¶ 8.)

On July 9, 2020, BPD Defendants arrested Plaintiff for Clark's murder.  *Id.* ¶ 4.  Plaintiff asserts that, upon his arrest, "Defendants did not provide a sufficient basis for their allegations that Plaintiff had murdered Clark but based their allegations on unspecified information ascertained from aerial surveillance conducted by [the] spy plane."  *Id.* ¶ 6.  The basis was not disclosed to Plaintiff in his charging documents; although the documents did include "a vague description of 'video evidence.'"  *Id.* ¶¶ 7, 9.  Ultimately, Plaintiff was charged by indictment with first-degree murder, use of a firearm in a violent crime, and possession of a firearm by a person with a felony conviction.  *Id.* ¶ 10.

Plaintiff's trial was scheduled to begin on October 24, 2022.  *Id.* ¶ 12.  But on that day, the Baltimore City State's Attorney's Office "suddenly dropped the case," citing a "missing key witness."  (ECF No. 4 ¶¶ 12, 14.)  Defendants' use of the "spy plane" had not been disclosed to Plaintiff or his defense counsel prior to trial.  *Id.* ¶ 13.  It appears from the Complaint that Plaintiff remained incarcerated from his arrest until dismissal of his charges, at which time he was released.  *Id.* ¶¶ 15, 18.  On November 16, 2022, Defendants re-indicted Plaintiff, and he was placed on house arrest until his trial in August 2023.  *Id.*

On August 23, 2023, at the close of Plaintiff's trial, the Honorable Judge John A. Howard of the Circuit Court for Baltimore City, Maryland, granted Plaintiff's motion for judgment of acquittal, concluding "there had been no sufficient evidence presented by Defendants to identify Plaintiff as the person who killed Steven Clark."  *Id.* ¶ 16.  Plaintiff's defense counsel remained

unaware of the aerial surveillance evidence against Plaintiff until he was contacted by media related to a story. *Id.* ¶ 17.

As a result of Defendants' actions, Plaintiff alleges he "spent two years incarcerated in the Baltimore City Detention Center and another on home detention," "lost his job," "became estranged from his young daughter," "caught COVID-19 three times," "remained estranged from his family," and "suffered serious mental health deterioration." (ECF No. 4 ¶ 18.)

On August 19, 2024, Plaintiff initiated this action against Defendants in the Circuit Court for Baltimore, City, Maryland, asserting the following counts:

> Count I: Violation of the Maryland Local Government Tort Claims Act ("LGTCA") by all Defendants;
>
> Count II: Negligence against all Defendants;
>
> Count III: Violation of the Fourth Amendment—42 U.S.C. § 1983 against all Defendants; and
>
> Count IV: Violation of the Sixth Amendment and Article 21 of the Maryland Declaration of Rights—Speedy Trial against all Defendants.

*Id*. ¶¶ 19–28.

With regard to Count I, Plaintiff alleges that he "complied with all notice requirements under the LGTCA," and that "Defendants are liable under the LGTCA for the tortious acts committed by their employees under the LGTCA." *Id.* ¶ 20.

With regard to Count II, Plaintiff alleges:

> Defendants owed a duty to Plaintiff to act with reasonable care in the execution of their duties and to ensure Plaintiff's constitutional rights were protected including Plaintiff's reasonable expectation of privacy in accordance with the Fourth Amendment and the right to a speedy trial pursuant to Plaintiff's Sixth Amendment rights. Defendants breached this duty while in the scope of their employment by fai1ing to properly disclose critical evidence. As a direct and proximate result of Defendants' conduct, Plaintiff has

5

suffered significant damages, including but not limited to loss of job, income, mental and physical anguish, and loss of companionship and relationships.

*Id.* ¶ 24.  In particular, he avers that "Defendants failed to disclose relevant and material evidence about which [he] only learned from a media source."  *Id.* ¶ 23.

With regard to Count III, Plaintiff alleges that Defendants' actions constituted an unreasonable search and seizure in violation of the Fourth Amendment.  Citing to *Leaders of a Beautiful Struggle III*, Plaintiff asserts that "the aerial surveillance program initiated and utilized by Defendants . . . was deemed unconstitutional on the grounds the surveillance ascertained by the spy planes violated a person's reasonable expectation of privacy."  *Id.* ¶ 26.

Finally, with regard to Count IV, Plaintiff asserts that "Defendants, acting under color of state law, violated Plaintiff's right to a speedy trial by causing unreasonable delays in the commencement of Plaintiff's trial.  As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered irreparable and significant harm."  (ECF No. 4 ¶ 28.)

On October 21, 2024, then-Defendant the Office of the State's Attorney for Baltimore City removed Plaintiff's suit to this court.  (ECF No. 1).  On December, 20, 2024, BPD Defendants filed the instant Motion seeking to dismiss all of Plaintiff's claims.  (ECF No. 11.)

## II.    <u>LEGAL STANDARD</u>

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction."  *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). Subject matter jurisdiction challenges may proceed as "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'"

*Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same).   Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018) (same). "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)).   "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).

BPD Defendants assert a facial challenge to the court's subject matter jurisdiction, averring that sovereign immunity bars Plaintiff's state and common law claims against BPD.   (ECF No. 11-1 at p. 4.)

### B.  Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule

12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the

plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the

plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his

claim entitling him to relief." *Edwards*, 178 F.3d at 244.

      "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of

the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp.

3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to

deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true,

must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations,

LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin

v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.    <u>ANALYSIS</u>

### A.    Counts II and IV: Negligence and Violation of Article 21 of the Maryland Declaration of Rights[3]

The court turns first to BPD Defendants' assertion of state sovereign immunity and public official immunity.  BPD Defendants seek dismissal of Plaintiff's negligence claim against them on the basis that (1) BPD is shielded from liability by the doctrine of sovereign immunity;[4] and (2) Harrison is similarly entitled to public official immunity.[5]  (ECF No. 11-1 at pp. 9–12.) Plaintiff avers in response that immunity does not bar his claims against BPD Defendants because he has sufficiently alleged gross negligence, reckless disregard for his constitutional rights, and malice.  (ECF No. 15 at pp. 2–5.)

#### 1.    *State Sovereign Immunity*

"State sovereign immunity . . . 'bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.'"  *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021) (quoting *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019)).  "[W]hen a governmental agency or actor

---

[3] "When considering a State law claim, the Court must apply the law of the forum state (including as to choice of law), whether proceeding under supplemental or diversity jurisdiction." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 418 n.17 (D. Md. 2022) (citing cases).

[4] BPD Defendants make a cursory reference that to the extent Harrison is sued in his official capacity, he is similarly entitled to State sovereign immunity.  (ECF No. 11-1 at p. 10.)  Because the court concludes Harrison is entitled to public official immunity, it does not reach the question of State sovereign immunity. The court notes, however, that as a matter of Maryland law, there is no distinction between individual and official capacities with regard to state common law or state constitutional claims.  *See, e.g.*, *Ritchie v. Donnelly*, 324 Md. 344, 375 (1991) (explaining that state law does not allow for "bifurcation" of state constitutional claims into official and individual capacity claims); *Graham v. Maryland*, 738 F. Supp. 3d 644, 657 (D. Md. 2024) ("Maryland law does 'not follow the federally recognized distinction between official and individual capacity actions' for tort actions against State officials."); *Higginbotham v. Pub. Serv. Comm'n of Md.*, 412 Md. 112, 130 (2009) (noting that in the context of "intentional tort actions asserted against Maryland public officials . . . it is of no consequence whether the Maryland public official is sued in his or her 'official' capacity or 'individual' capacity"); *Shriner v. City of Annapolis*, No. CIV.A. ELH-11-2633, 2012 WL 2317415, at *3 (D. Md. June 15, 2012) ("[T]he Maryland Court of Appeals has made clear that the individual/official capacity dichotomy is not relevant to claims under Maryland state law" and therefore, "[i]t is not meaningful under Maryland law to divide claims according to individual capacity and official capacity").

[5] BPD Defendants also seek dismissal of Count I on this basis.  (ECF No. 11-1 at p. 11.)  The court addresses Count I *infra*.

can, and does, avail itself of the doctrine of sovereign immunity, no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern v. Bd. of Regents, Univ. Sys. of Md.*, 380 Md. 691, 701 (2004).  At all times relevant to the action here, BPD was an agency of the State.[6]  *See Houghton v. Forrest*, 412 Md. 578, 588 (2010) (recognizing that BPD "was created as a state agency, through an act of the General Assembly, and not as a municipal agency").

The MTCA provides a limited waiver of the State's sovereign immunity for tort actions. *Williams v. Morgan State Univ.*, 484 Md. 534, 554 (2023); *see Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *5 (D. Md. Apr. 20, 2021) (same).  The limited waiver "applies only to 'tortious conduct . . . committed by 'State personnel'– a defined term." *Nicholson*, 2021 WL 1541667, at *5 (quoting *Estate of Burris v. State*, 360 Md. 721, 737 (2000)); *see* MD. CODE ANN., STATE GOV'T § 12-104(a)).  "Critically, the definition of 'State personnel' does *not* include members of the Baltimore Police Department."[7]  *Nicholson*, 2021 WL 1541667, at *5 (emphasis in original) (citing MD. CODE ANN., STATE GOV'T § 12-101(a)).  The Supreme Court of Maryland (then Court of Special Appeals of Maryland) recognized that, by legislation, the State has "reaffirmed the preservation of its sovereign immunity for acts committed by municipal police, including members of the [BPD]."  *Houghton v. Forrest*, 412 Md. 578, 589– 90 (2010); *see Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 313–14 (2001) (recognizing

---

[6] The court takes judicial notice that, at the end of 2024, voters approved a charter amendment to establish BPD as an agency of the Mayor and City Council of Baltimore.  *See Official 2024 Presidential General Election Results for Baltimore City*, https://elections.maryland.gov/elections/2024/general_results/ gen_qresults_2024_by_county_3.html (last visited July 31, 2025).  Neither party argues that the subsequent legislation changes the analysis in this case, as all of events occurred prior to passage of the amendment.

[7] Citing to *Clea v. Mayor & City Council of Balt.*, 312 Md. 662 (1988), Plaintiff contends that BPD officers are state personnel.  (ECF No. 15 at p. 2.)  Plaintiff is incorrect.  "[T]he General Assembly amended the [MTCA statute enumerating classes of state personnel] after [its] decision in *Clea* . . . .  The newly modified statute helped clarify that the bounds of immunity and liability under the MTCA applied only to individuals directly paid by or otherwise under direct control of the state itself."  *Houghton v. Forrest*, 412 Md. 578, 589 (2010) (citations omitted).

same).  Accordingly, the MTCA does not waive BPD's sovereign immunity as to Plaintiff's state law claims (Counts II and IV), and BPD thus properly invokes that immunity.  The court will grant the Motion on that basis.  The court addresses indemnification under the LGTCA separately *infra*.

### 2. *Public Official Immunity*

Similarly, "Maryland courts have long recognized the common law doctrine of public official immunity." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 297 (D. Md. 2020).  The doctrine is "quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee v. Cline*, 384 Md. 245, 258–60 (2004) (citing cases).  The Supreme Court of Maryland "has consistently held that Maryland common law qualified immunity in tort suits, for public *officials* performing *discretionary* acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.'"[8] *Id.* at 258 (emphasis in original); *see Cooper v. Rodriguez*, 443 Md. 680, 713 (2015) ("Common law public official immunity applies to public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." (footnote and citation omitted)).

"[T]hree prongs . . . must be satisfied in order for a government representative to qualify for immunity: (1) he or she must be a *public official*; and (2) his or her tortious conduct must have occurred while performing *discretionary* acts in furtherance of official duties; and (3) the acts must be done without malice." *Williams v. Mayor & City Council of Baltimore*, 359 Md. 101, 140–41 (2000) (emphasis in original) (footnote omitted).  Public official immunity is "defeated" if the official acts with malice, gross negligence, or commits an intentional or state constitutional tort. *Johnson*, 452 F. Supp. 3d at 297–98 (citations omitted).

---

[8] To the extent BPD Defendants intend to assert Harris's entitlement to public official immunity as to Plaintiff's state constitutional tort claim, their argument is thus unavailing.

As to Plaintiff's negligence claim, there is no dispute that Harrison is a public official and that the allegedly tortious conduct occurred while performing a discretionary act in furtherance of his official duties. *See Cooper*, 443 Md. at 727 (explaining that "law enforcement officers are public officials for purposes of common law public official immunity" (citation modified)); *Robinson v. Bd. of Cnty. Comm'rs for Prince George's Cnty.*, 262 Md. 342, 347 (1971) (holding that "when they are within the scope of their law enforcement functions . . . police officers 'are clearly acting in a discretionary capacity'"). Plaintiff challenges the third prong, averring that he has sufficiently alleged gross negligence and malice on the part of Harrison. (ECF No. 15 at p. 5.)

"Actual malice is established by proof that the defendant-officer intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Johnson*, 452 F. Supp. 3d at 298 (quoting *Bord v. Baltimore County*, 220 Md. App. 529, 557 (2014)); *see Hines v. French*, 157 Md. App. 536, 563 (2004) (same). "Actual malice does not always have to be shown with specificity; it can be inferred." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 307 (2000) (quoting *Leese v. Baltimore Cnty.*, 64 Md. App. 442, 480 (1985), *disapproved of on other grounds by Harford Cnty. v. Town of Bel Air*, 348 Md. 363 (1998)). A plaintiff, however, "cannot rely on bare allegations that a particular act raises an inference of malice." *Rodwell v. Wicomico Cnty., Maryland*, No. CV DKC 22-3014, 2024 WL 1178202, at *6 (D. Md. Mar. 19, 2024) (quoting *Koon as next friend of Glay v. Prince George's Cnty., MD*, No. 17-cv-2799-DKC, 2019 WL 1317401, at *7 (D. Md. Mar. 22, 2019)). Maryland courts reject "attempts to rely on bare allegations that a particular act raises an inference of malice." *Hines*, 157 Md. App. at 563 (citation omitted). "Because a defendant's subjective intent is an element of the plaintiff's claim, the plaintiff must

point to specific evidence that raises an inference that the defendant's actions were improperly motivated in order to defeat the motion." *Id.* at 536 (quoting *Lee*, 149 Md. App. at 85).

Gross negligence, in turn, "is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Anne Arundel Cnty. v. Reeves*, 474 Md. 46, 73 (2021). While "a fine line exists between allegations of negligence and gross negligence," *see Stracke v. Est. of Butler*, 465 Md. 407, 420 (2019) (citation omitted), gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Reeves*, 474 Md. at 73 (emphasis in original) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). "Gross negligence, like deliberate indifference, is rooted in intentionality." *Walker v. Heavener*, No. CV JKB-16-3136, 2019 WL 3017658, at *7 (D. Md. July 10, 2019). Ultimately, "[a] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Stracke*, 465 Md. at 421 (quoting *Barbre*, 402 Md. at 187). "Hindsight is 20/20," the court explained. *Id.* at 426. A "well-intended error" in judgment is not the same as "wanton and reckless disregard" for life. *See id.* (quoting *McCoy v. Hatmaker*, 135 Md. App. 693, 713 (2000)).

Plaintiff's claim of negligence is based on Defendants' duty "to act with reasonable care in the exercise of their duties and ensure Plaintiff's constitutional rights were protected." (ECF No. 4 ¶ 24.) According to Plaintiff, "Defendants breached this duty while in the scope of their employment by failing to properly disclose critical evidence." *Id.* Of Harrison, Plaintiff alleges he acted with malice:

> Defendants violated the Memorandum of Understanding (MOU) between the City of Baltimore and Persistent Surveillance Systems

> which ensured the spy plane's flights would be disclosed to residents, the data properly stored, and that the spy plane would only be used to investigate murders, shootings, armed robberies, and carjackings. The supplemental request as approved by then Commissioner Harrison violated the MOU as such requests should only be utilized under exigent circumstances, as addressed and stated in the MOU. It was further noted that Defendants' supplemental requests and use of the spy planes provided Defendants unlimited ability to surveil its citizens. These acts in the aggregate constitute deliberate and intentional performance of an illegal act which indubitably demonstrates 'malice' under Maryland law.

(ECF No. 4 ¶ 23.)  Notably, as Defendants assert, Plaintiff makes no allegation of gross negligence or reckless disregard of Plaintiff's rights.

Plaintiff's lone allegation that Harrison approved the supplemental request is not sufficient to allege plausibly that he acted "deliberately and willfully" to injure Plaintiff.  *See Johnson*, 452 F. Supp. 3d at 298, *supra*.  Even assuming without deciding that Harrison's approval of a request that violated the MOU is indicative of gross negligence (notwithstanding Plaintiff's failure to characterize it as such), Harrison's approval of the request is materially and wholly distinct from the tortious act complained of here—the failure to disclose critical evidence.  As to that tortious act, Plaintiff offers no facts that BPD or Harrison, as opposed to the State's Attorney's Office, had an obligation to provide "critical evidence" and, either with gross negligence or actual malice, failed to do so.[9]  Accordingly, the court is persuaded that Harrison is entitled to public official immunity as to Count II.  The court will therefore grant the Motion on that basis.

## B.  Count III: 42 U.S.C. § 1983 Claim

---

[9] Nor does Plaintiff allege that BPD or Harrison failed to fulfill the State's Attorney's Office request that it turn over the video surveillance evidence (in its general request for all BPD files and evidence); quite to the contrary, Plaintiff's allegations are rooted in the wrongful failure of the State's Attorney's Office to turn over the footage and related evidence it possessed.  *See* ECF No. 4 at ¶ 9 (regarding reference to "video evidence" in charging documents).  While the State's Attorney's Office generally may not rely on a BPD failure to turn over evidence to try shield itself from a defense motion to exclude (or other applicable motion) in a criminal case, the facts here suggest that BPD did turn over what it had developed against Plaintiff, including the footage, and that the failure to turn over the footage was that of the State's Attorney's Office.  At least that is what Plaintiff alleges.

### 1. *BPD and Harrison in his Official Capacity*

BPD Defendants also argue that Plaintiff improperly asserts a direct § 1983 claim against BPD and Harrison in his official capacity. (ECF No. 11-1 at pp. 8–9.) In particular, they contend, "because Plaintiff has alleged a direct Fourth Amendment violation against the BPD in Count III, rather than plead a *Monell* claim, Plaintiff's direct § 1983 claim must be dismissed." *Id.* In response, however, Plaintiff confirms that he brings a *Monell* claim on the basis that BPD unconstitutional policy, implementation of the AIR Program, violated Plaintiff's Fourth Amendment rights.

In *Monell v. Department of Social Services*, the Supreme Court concluded that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). The Court further explained that "[l]ocal governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief, where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.*

In asserting a *Monell* claim, a plaintiff must "adequately plead . . . the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Such claims consist of two components: "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Saltz v. City of Frederick*, 538 F. Supp. 3d 510, 554 (D. Md. 2021) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). Liability arising from a policy or custom will "not, however, 'be inferred merely from municipal inaction in the face of

isolated constitutional deprivations by municipal employees.'" *Id.* (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)).  The municipality's conduct must demonstrate "'deliberate indifference' to the rights of its inhabitants." *Id.* (quoting *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997)).  Municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

BPD Defendants present no substantive argument that Plaintiff fails to allege a plausible *Monell* claim, and instead focus solely on a possible direct § 1983 claim.  Their reply makes no mention of Plaintiff's § 1983 claim or a *Monell* claim; rather, it focuses on qualified immunity and whether the unconstitutionality of the AIR program was clearly established at the time of the alleged violations here.  (ECF No. 17 at pp. 2–4.)  The court is unable to discern how, if at all, BPD Defendants advance challenges to Plaintiff's asserted *Monell* claim, which could proceed (and prevail) despite a finding of qualified immunity.  *See Int'l Ground Transp. v. Mayor And City Council Of Ocean City, MD*, 475 F.3d 214, 219 (4th Cir. 2007) ("[B]ecause municipalities are not entitled to assert a qualified immunity defense, a finding of a constitutional violation is conclusive as to their liability. Thus, a jury could find that a constitutional violation has occurred but that the individual defendants are entitled to qualified immunity.").  For the foregoing reasons, the court will deny the Motion as to Count III as against BPD and Harrison in his official capacity.[10]

---

[10] Plaintiff requests leave to amend if the court concludes that his Fourth Amendment claim fails to "suffice[] the elements as addressed in *Monell*."  (ECF No. 15 at p. 9.)  Because the court denies the Motion as to Count III, it does not address Plaintiff's request to amend.  Plaintiff remains free to seek leave to amend, in accordance with Federal Rule of Civil Procedure 15(a)(2), should he so choose.

## 2. *Harrison in his Individual Capacity*

As noted above, BPD Defendants also contend Harrison is entitled to qualified immunity on Count III, because, at the time of the alleged violation of Plaintiff's rights, the law did not clearly establish that Harrison's conduct violated the Fourth Amendment.  (ECF No. 11-1 at pp. 12–14.)  According to Plaintiff, the subsequent holding of the Fourth Circuit that the AIR program is unconstitutional applies retroactively to Harrison's actions.  (ECF No. 15 at pp. 8–9.)

A government official sued in his individual capacity may invoke the protection afforded by qualified immunity.  *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense.  The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong."  *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

"Ordinarily, the question of qualified immunity should be decided at the summary judgment stage."  *Willingham v. Crooke*, 412 F.3d 553, 558–59 (4th Cir. 2005).  But because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging

discovery' that can be 'peculiarly disruptive of effective government,'" the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow*, 457 U.S. at 817). A defendant may therefore assert the defense of qualified immunity on a motion to dismiss, "[s]o long as qualified immunity does not turn on *disputed facts*." *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013) (emphasis in original). If the court determines that a government official took action that a reasonable officer would have believed was lawful, the official is entitled to dismissal before discovery. *See Anderson*, 483 U.S. at 646 n.6, *supra*.

"[W]hen asserted at this early stage in the proceedings, 'the [qualified immunity] defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Balt. City State's Atty's. Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). Thus, where a plaintiff "has alleged facts violative of [his] constitutional right," and a right is clearly established, a quality immunity defense is "unavailing" at an early stage of litigation. *Summerville v. Neekson*, No. CV ELH-23-1290, 2024 WL 3013169, at *6 (D. Md. June 14, 2024); *see also Canty v. Bishop*, No. CV SAG-21-3151, 2023 WL 284446, at *7 (D. Md. Jan. 18, 2023) (declining to decide the issue of qualified immunity based on disputed facts where a defendant moved to dismiss or in the alternative for summary judgment); *Clark v. Portmess*, No. CV SAG-20-1819, 2021 WL 5233560, at *6 (D. Md. Nov. 10, 2021) (same).

"Determining whether qualified immunity is appropriate is a two-step inquiry." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). "[T]he court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right to be free from unreasonable seizures, and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct

violated the asserted right.'"  *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *as amended* (Aug. 22, 2017) (quoting *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007)).  "The answer to both questions must be in the affirmative to defeat the officer's entitlement to immunity."  *Id.*  As explained above, "the plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong."  *Stanton*, 25 F.4th at 233, *supra*.

BPD Defendants focus on the second prong—whether the right was clearly established at the time of the alleged event.  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640).  "The unlawfulness of an official's conduct must be 'apparent in light of pre-existing law.'"  *Nazario v. Gutierrez*, 103 F.4th 213, 230 (4th Cir. 2024) (quoting *Booker v. S.C. Dept. of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017)).  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."  *Benton v. Layton*, 139 F.4th 281, 292 (4th Cir. 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Here, the relevant facts are undisputed.  It is undisputed that BPD Defendants' alleged use of the AIR program at issue here occurred months after Judge Bennett's decision finding that the Fourth Amendment challenge to the program was unlikely to succeed, *see Leaders of a Beautiful Struggle I*, 456 F. Supp. 3d at 717, months before the Fourth Circuit's decision that the AIR program did not invade a reasonable expectation of privacy under the Fourth Amendment, *see Leaders of a Beautiful Struggle II*, 979 F.3d at 229, and almost a year before the Fourth Circuit ultimately concluded the AIR program violated the Fourth Amendment, *see Leaders of a Beautiful Struggle III*, 2 F.4th at 333.

19

According to Defendants, the procedural history of the *Leaders of a Beautiful Struggle* case shows that the unconstitutionality of the AIR program was not clearly established at the time of Harrison's alleged action in this case. The court agrees. First, Plaintiff points to no Supreme Court or Fourth Circuit caselaw in existence at the time of Harrison's alleged actions that would have led a reasonable official to know that his conduct violated the law. Further, "[i]f there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies." *Korb v. Lehman*, 919 F.2d 243, 247 (4th Cir. 1990) (citation omitted). That a judge of this court determined that a Fourth Amendment claim about the AIR program was not likely to succeed on its merits, and that the Fourth Circuit held the AIR program did not violate the Fourth Amendment, support the conclusion that its unconstitutionality was not clearly established at the time Harrison took the action at issue. Indeed, as BPD Defendants contend, "[s]ince qualified immunity is appropriate if reasonable officers could disagree on the relevant issue, . . . it surely must be appropriate when reasonable jurists can do so." *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) (citing *Sevigny v. Dicksey,* 846 F.2d 953, 957 (4th Cir. 1988)); *see also Potts v. DiPaola*, No. CV RDB-21-1073, 2022 WL 616814, at *8 (D. Md. Mar. 2, 2022) (explaining that "[i]t stands to reason that where two different judicial bodies come to opposing conclusions regarding a Fourth Amendment claim, there is a legitimate question about the contours of the right under the circumstances presented").

Plaintiff's argument for retroactive application of the instant alleged constitutional violation is not persuasive. As Defendants' note, the very nature of the second qualified immunity prong is to capture "whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *See Humbert*, 866 F.3d at 555, *supra*. Retroactive application turns the test on its head. Plaintiff makes

much of the fact that the State's Attorney's office "was aware of the constitutional concerns of the AIR program at the time it was used as surveillance over Plaintiff." (ECF No. 14 at pp. 7 –8.) But whether Harrison's partner office was possibly "aware of constitutional concerns" is not the standard; the inquiry is whether the law was clearly established at the time the officer acted such that a reasonable officer would have understood the conduct was constitutionally unsound. *See Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) ("The requirement, after all, is that the law be clearly established, not simply possibly established or even probably established."). For these reasons, the court is unpersuaded by Plaintiff's arguments regarding retroactive application and "awareness" of "constitutional concerns."

The court is persuaded that this case presents a circumstance where qualified immunity is properly asserted, and should be considered on, a motion to dismiss. The court will grant the Motion on this basis.

## C. Count IV: Violation of Sixth Amendment and Article 21 of the Maryland Declaration of Rights

BPD Defendants further argue that Plaintiff's Count IV against them fails because Plaintiff does not allege any facts describing how BPD and Harrison caused the asserted violations. (ECF No. 11-1 at pp. 14–15.) Plaintiff does not respond to this argument, effectively conceding the point. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she failed to respond to argument). Moreover, the court agrees that Plaintiff asserts no facts upon which a reasonable conclusion could be based that BPD Defendants violated his rights under the Sixth Amendment and Article 21 of the Maryland Declaration of Rights. The court will grant the Motion as to Count IV.

### D. Count I: LGTCA

Finally, BPD Defendants move for dismissal of Plaintiff's Count I, which asserts a claim of violation of the LGTCA. BPD Defendants argue the claim fails as a matter of law because the LGTCA does not give rise to an independent cause of action. (ECF No. 11-1 at pp. 7–8.) Plaintiff offers no response to this argument, again, effectively conceding the point. *See Stenlund*, 172 F. Supp. 3d at 887 and *Ferdinand-Davenport*, 742 F. Supp. 2d at 777, *supra*.

"The LGTCA limits liability, provides for indemnification, and establishes procedural requirements relating to suits against officials of local government authorities. It expressly applies to suits against employees of [BPD]."[11] *Houghton v. Forrest*, 412 Md. 578, 591–92 (2010) (citing CJ § 5–301(d)(21)). Of import here, "the LGTCA [does] not serve to create a cause of action against the local governments or their employees." *Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 640 (2015); *see Myers v. Town of Elkton, Maryland*, No. BPG-22-803, 2023 WL 2242870, at *9 (D. Md. Feb. 24, 2023) (citation omitted) (recognizing same); *Johnson v. Baltimore Police Dep't*, No. CV ELH-19-00698, 2020 WL 1169739, at *37 (D. Md. Mar. 10, 2020) (recognizing same); *Grim v. Baltimore Police Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at *27 (D. Md. Nov. 8, 2019) (recognizing same). Instead, "[t]he only actions which can be brought directly against a local government are those authorized by law which is separate and distinct from the LGTCA." *Rounds*, 441 Md. at 640 (2015) (alterations in original) (quoting *Williams v. Maynard,* 359 Md. 379, 394 (2000)).

In any event, the LGTCA does not "authorize suit against the local government for its employee's actions." *Holloway-Johnson v. Beall*, 220 Md. App. 195, 207–208 (2014), *aff'd in*

---

[11] The LGTCA "prohibits the BPD from claiming 'governmental or sovereign immunity to avoid [its] duty to defend or indemnify an employee.'" *Middleton v. Baltimore City Police Dep't*, No. CV ELH-20-3536, 2022 WL 268765, at *15 (D. Md. Jan. 28, 2022). That has not been challenged here.

*part, rev'd in part,* 446 Md. 48 (2016); *see Beall v. Holloway-Johnson*, 446 Md. 48, 76–77 (2016) ("[T]he LGTCA does not allow a plaintiff to bring suit directly against the local government."); *Williams v. Maynard*, 359 Md. 379, 394 (2000) ("[T]he LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments."); *Boyd v. Armstrong*, No. CV ELH-17-2849, 2019 WL 1440876, at *35 (D. Md. Mar. 29, 2019) ("[T]he LGTCA does not permit plaintiffs to name the County directly in a common law tort suit."). "Put simply, the LGTCA only prohibits the BPD from asserting sovereign immunity to avoid its statutorily imposed duty to defend or indemnify its employees. Even under the LGTCA, plaintiffs cannot bring state law claims directly against the BPD for the actions of Baltimore police officers acting within the scope of their employment." *Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *9 n.8 (D. Md. Apr. 20, 2021).

Even assuming Plaintiff's claim is based solely on indemnification, it is subject to dismissal inasmuch as the court dismisses all claims as against Harrison as the individual employee. In view of the foregoing, the court will grant the Motion to the extent it seeks dismissal of Count I.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, the Motion will be granted as to Counts I, II, III as against Harrison in his individual capacity, and IV; and denied as to Count III as against BPD and Harrison in his official capacity.[12]

---

[12] BPD Defendants seek dismissal with prejudice. The court declines to dismiss this action with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court"). Relatedly, to the extent the dismissal is based on subject matter jurisdiction, a dismissal for a defect in subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022) (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013)).

August 4, 2025                                   /S/
                                                _____
                                                Julie R. Rubin
                                                United States District Judge